UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ASSOCIATION TO PRESERVE <br> AND PROTECT LOCAL <br> LIVELIHOODS, *et al.*, <br> <br> Plaintiffs, <br> <br> v. <br> <br> TOWN OF BAR HARBOR, <br> <br> Defendant. | No. 1:22-cv-00416-LEW |

## **ORDER ON MOTION TO INTERVENE**

In this action, Plaintiffs, a group of family-owned limited liability companies, a local business league and the Penobscot Bay and River Pilots Association seek declaratory and injunctive relief to prevent implementation of Bar Harbor's recently initiated land use ordinance that caps the daily total of passengers who may be disembarked from cruise ships on, over, or across property in the Town.  The matter is before the Court on a motion to intervene filed by Charles Sidman, a Bar Harbor resident and business owner who seeks leave to intervene as a party defendant.  Verified Mot. to Intervene and Alt. Mot. to Participate as Amicus Curiae (ECF No. 45).  The motion is opposed by both the Plaintiffs and the Defendant.

### Background

The matter is presently in the briefing cycle of a motion for preliminary injunction. The deadline for the Town to oppose the motion has been continued by agreement of the

1

parties to facilitate settlement negotiations that will implement a preliminary injunction by stipulation, which voluntary injunction would postpone implementation of the ordinance during the pendency of this action and potentially beyond (throughout both the 2023 and 2024 extended seasons).[1] Town's Obj. at 2 n.2 & 9 (ECF No. 55).

Through his motion, Mr. Sidman verifies that he has been "adversely affected by the influx of cruise ship passengers," who cause, in his experience, "excessive congestion, overcrowding, and inundat[ed] local services, amenities, and attractions." *Id.* at 1. Mr. Sidman also asserts that the Town is not likely to be a vigorous opponent in this litigation over the constitutionality of the Town's new cruise ship ordinance, which ordinance arose from a popular initiative that the Town Council actively opposed.

Based on my review of the available record, the history of this controversy reflects a decidedly pro cruise ship sentiment on the part of the Bar Harbor Town Council. The Town's Cruise Ship Committee has been chaired by an agent of a principal plaintiff and does not appear (at first blush) to have done anything other than foster the growth of cruise ship passenger traffic. Over time, visitations have increased in volume, rather dramatically in more recent years. In 2016, itself a year of significant growth, 117 cruise ships visited with a passenger complement of 163,000. Most (roughly 68%) visited in September and October. As cruise ship visitations steadily swelled (stalling out only during a COVID-19-induced hiatus), the tide of local sentiment was turning against the cruise ship industry. The record contains evidence that the Town and the Plaintiffs were aware of this shifting

---

[1] In exchange, the Town explains that it is reducing its exposure to claims for money damages. Bar Harbor's Verified Obj. at 2 n.2 & 9.

tide. Nevertheless, before the 2022 season, through a "voluntary" system of reserving cruise ship visits, the Town authorized cruise ship visits totaling as many as 180,000 passengers for September and October alone (i.e., more passengers in two months of 2022 than in the entirety of 2016).

In March 2022, an initiative seeking to curtail the passenger influx was set in motion and readily garnered sufficient support to go on the municipal ballot. In the months leading up to the election, the Town actively encouraged the electorate to vote down the initiative. By all appearances and representations, the initiative movement and the new ordinance have proved quite divisive at the local level. Despite the Town's efforts, the initiative passed.

At present, the Plaintiffs and the Town are attempting to settle the matter of the Plaintiffs' motion for preliminary injunction. The record strongly suggests to me that the effort must be focused on protecting the 2024 season because the initiative already specified that the ordinance's cap on passenger visits would not be imposed for cruise ship reservations accepted by the Harbor Master before March 16, 2022. Plaintiffs have offered sworn testimony that "[c]ruise lines generally create the itineraries for their ships approximately eighteen to twenty-four months in advance." Moody Aff. ¶ 7. In other words, the 2023 season should already be secure. And while the parties' effort to stipulate a resolution for the 2024 season is timely for purposes of the cruise ship industry's itinerary planning, they have not provided any indication in their filings that their voluntary approach to settling the matter of the preliminary injunction involves any serious compromise in terms of passenger volumes that would be responsive to the expressed will

of the Town of Bar Harbor's electorate, even as they insist in briefs opposed to Mr. Sidman's intervention that the Town will vigorously litigate to uphold the ordinance.

## Discussion

"On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction" if the person "is so situated that disposing of the action may as a practical matter impair or impede [his] ability to protect [his] interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Known as "intervention as of right," this avenue for intervention in a lawsuit requires that the moving party satisfy every requirement (timeliness, interest, threat of impairment, and inadequate representation by existing parties). *Victim Rights Law Ctr. v. Rosenfelt*, 988 F.3d 556, 560 (1st Cir. 2021); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 474 (1st Cir. 2015). If the moving party cannot meet every requirement, then a second avenue for intervention, labeled "permissive intervention," is available if he "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). It is generally understood that intervention as of right "is somewhat more circumscribed" than its permissive cousin, and that there is enough distance between them in terms of the rigor of the relative standards for a district court to call shots that balance out "idiosyncratic factual settings," *Ungar v. Arafat*, 634 F.3d 46, 51 (1st Cir. 2011), based on a "commonsense view of the overall litigation," *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998).

Turning to the instant motion, no one suggests that Mr. Sidman's motion is not timely. Instead, they focus their challenge on Mr. Sidman's interest in the litigation and the Town's ability to adequately represent municipal residents who favor the ordinance.

Concerning his individualized interest, those opposed to Mr. Sidman's intervention argue that he cannot demonstrate a real or concrete interest beyond the interest of the general populace. I am not convinced by this argument. To the contrary, Mr. Sidman has a concrete personal stake in the alleged harms the ordinance was meant to redress. Quite unlike a party with no skin in the game who seeks to intervene solely to advocate on behalf of or against an enactment that is dividing popular opinion across a wide region, state, or nation,[2] Mr. Sidman is connected to this very localized controversy based on a personal investment in the Town of Bar Harbor, including an investment in its commercial downtown. Given this basic reality, it is reasonable to infer that he has a concrete, personal stake in the local commons that is impacted by the influx of cruise ship passengers throughout an extended season. This is more than a mere "undifferentiated, generalized interest." *Patch*, 136 F.3d at 205. In this regard, Mr. Sidman's interest in the litigation and that of the members of the Plaintiff Association appear to occupy opposite sides of the very same coin.[3]

---

[2] That is, quite unlike the circumstances at play in most of the cases cited by Mr. Sidman's opponents.

[3] Separately, the Town of Bar Harbor insists that Mr. Sidman must also meet the demands of Article III's standing requirements, noting that the First Circuit has not resolved the issue and the existence of a circuit split. Bar Harbor's Verified Obj. at 6 (citing *Mangual v. Rotger-Sabat*, 317 F.3d 45, 61 & n.5 (1st Cir. 2003)). Having found a plausible basis to infer more than an undifferentiated, generalized interest, and having based that interest on something other than Mr. Sidman's mere status as a principal proponent of the ordinance, standing does not appear to be an obstacle to Mr. Sidman's participation. *Cf. United States v. AVX Corp.*, 962 F.2d 108, 118 (1st Cir. 1992) (analogous standing concern in the context of

Those opposed to Mr. Sidman's intervention also contend that his motion should fail because the interest he seeks to represent has an adequate champion: the Town of Bar Harbor. On this issue, Mr. Sidman's request for intervention as of right is somewhat equivocal due to the presumption of adequate representation that arises when the defendant is a governmental body. *See Victims Rights Law Ctr.*, 988 F.3d at 561. The First Circuit holds that a "strong affirmative showing" is needed to successfully rebut the presumption, *id.*, and it has demonstrated that it will affirm an exercise of discretion that denies intervention on this basis, even with respect to permissive intervention, *id.* at 564. However, in this case I find that the request for intervention is appropriate given the Town's history of boosterism for the cruise ship industry. Indeed, there is a strong showing in the record so far adduced that the Town has long given over to one or more agents of the Walsh family enterprises (i.e., most of the nominal plaintiffs) what appears (upon first impression) to be carte blanche in matters of Bar Harbor's informal and voluntary cruise ship policy. When added to the fact of the Town's opposition to the ordinance there arises an idiosyncratic factual setting that supports a commonsense finding in favor of intervention.

The remaining challenge worthy of comment is the contention that permitting intervention will only result in delay because Mr. Sidman's participation might monkey

---

environmental litigation); *see also Nergaard v. Town of Westport Island*, 2009 ME 56, ¶ 18, 973 A.2d 735, 741 ("standing has been liberally granted to people who own property in the same neighborhood as the property that is subject to a permit or variance"). Given the plausible scope of the impact of the land use in issue, even under Maine law Mr. Sidman appears to have viable standing given his regular actual use of the downtown area, his ownership of a business in the vicinity of the use, and the fact that he is among the persons whom the ordinance is designed to protect. *See id.* ¶¶ 19, 21. For these reasons, and solely to appease the Town's demand for a finding, I find that Mr. Sidman clears the Town's standing obstacle, even though I am not fully persuaded that such a finding is necessary.

wrench an otherwise amicable settlement of the matter of the Plaintiffs' motion for preliminary injunction. This challenge is particular to the permissive intervention analysis. Rule 24 states: "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Cases of this kind—constitutional challenges to popular enactments—typically move along at a much faster clip than standard civil litigation. Based on their briefs, the parties already appear to appreciate that this case is no exception. I fail to apprehend cause why Mr. Sidman would frustrate that objective, as he makes representations to the contrary in his reply brief. Reply at 4 (ECF No. 62).

In any event, those opposed to Mr. Sidman's intervention contend that the interest they share in an early and voluntary settlement of the preliminary injunction motion will be undermined by Mr. Sidman's participation, and that but for his intervention their agreement as to how best to proceed would dramatically expedite the final resolution of proceedings before this Court. Even if accurate, these exhortations are ultimately unpersuasive because they fail to demonstrate that any resulting delay will be excessive or disproportionate to the needs of the case or that the existing parties will be prejudiced in their ability to secure a timely and complete adjudication of their rights.

## Conclusion

Mr. Sidman's Motion to Intervene (ECF No. 45) is GRANTED. Mr. Sidman will hereafter be recognized as an intervenor-defendant.

**SO ORDERED.**

Dated this 28th day of February, 2023.

                                           /s/ Lance E. Walker
                                      UNITED STATES DISTRICT JUDGE