UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ASSOCIATION TO PRESERVE AND PROTECT LOCAL LIVELIHOODS, B.H. PIERS, L.L.C., GOLDEN ANCHOR L.C., B.H.W.W., L.L.C., DELRAY EXPLORER HULL 495 LLC, DELRAY EXPLORER HULL 493 LLC, and ACADIA EXPLORER 492 LLC, <br><br>　　　　Plaintiffs, <br><br>PENOBSCOT BAY AND RIVER PILOTS ASSOCIATION, <br><br>　　　　Plaintiff-Intervenor, <br><br>　v. <br><br>TOWN OF BAR HARBOR, <br><br>　　　　Defendant, <br><br>CHARLES SIDMAN, <br><br>　　　　Defendant-Intervenor. | No. 1:22-cv-00416-LEW |

## **ORDER ON MOTION FOR INJUNCTION PENDING APPEAL**

Plaintiff and Plaintiff-Intervenor ("Plaintiffs") move for an injunction pending appeal. Am. Joint Mot. for Inj. Pending Appeal ("Motion," ECF No. 228). *See* Fed. R. App. P. 8(a)(1)(C). Plaintiffs appeal this Court's Final Judgment following a bench trial of the merits. (ECF No. 206.) The Amended Decision and Order on which the Judgment

rests resolved their legal claims unfavorably by declining to invalidate in its entirety a municipal ordinance barring daily disembarkations from vessels of more than 1,000 persons per day over piers (or other property) situated in the Town of Bar Harbor ("the Ordinance"). *See* Judgment (ECF No. 207); Amended Decision and Order (ECF No. 206). Through their Motion, Plaintiffs seek to secure cruise line reservations for the 2025 season, at a significantly higher visitation rate than what is permitted under the Ordinance.

The following discussion presumes the reader's familiarity with the underlying Amended Decision and Order. Plaintiffs contend that they are likely to succeed on appeal by demonstrating that this Court (1) erroneously limited the preemptive impact of a federal regulation on the Ordinance's use of the all-encompassing word "persons" and/or (2) misapprehended the teachings of certain commerce clause precedent concerned for the free flow of commerce. *See* Mot. at 5 n.5. For the reasons that follow, I deny the request for injunctive relief.

To secure from a district court injunctive relief pending appeal, "the moving party need not persuade the court that it is likely to be reversed on appeal." *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 150 (D. Mass. 1998). However, "more than a mere possibility of relief is required." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks omitted). The provision of a stay pending appeal is a discretionary matter attuned to the circumstance of the case at hand. *Id.* at 433. The exercise of that discretion is guided by the moving party's ability to convincingly demonstrate the following: (1) likelihood of success on appeal; (2) irreparable harm absent injunctive relief; (3) a lack of substantial injury to others having an interest in the decision under appeal; and (4) service

of the public interest. *Id.* at 434; *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015). Of these elements, the "first two factors are the most critical," *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st 2010), but failure to "show a strong likelihood of success" on appeal is an independent basis for denial of an injunction pending appeal, *id.*; *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16 (1st Cir. 2002) (per curiam); *In re Elias*, 182 Fed. App'x 3 (1st Cir. 2006) (per curiam).

As for likelihood of success, Plaintiffs argue that I missed the mark when I concluded that the scope of the preemptive impact of 33 C.F.R. § 105.237, which assures shore access for seafarers, is limited to prohibiting Bar Harbor from applying the term "persons" in a way that prevents seafarer shore access. They contend that the ordinary result of federal preemption is total abnegation of any state law or regulation when preemption carves out part of an expansive term like "persons." Mot. at 8–11.[1] But, as Plaintiffs concede, the use of an expansive term like "persons" conveys a meaning that encompasses a long list of entities including both passengers and crew. Mot. at 7 ("'Persons' certainly does not mean anything less than passengers, seafarers, and all other humans disembarking from cruise ships into Bar Harbor."). The Federal Seafarer Shore Access Regulation effectively draws a line through only one of the words on the list implied by the term "persons," not the others. Thus, the term "persons" still includes a list of readily ascertainable entities who remain subject to the Ordinance.

---

[1] Plaintiffs also suggest that Bar Harbor will be incapable of crafting workable rules to honor the preemptive impact of the Seafarer Shore Access Regulation. I have considered this argument and find this contention to be less than persuasive. Developing a limitation to honor seafarer shore access seems a rather abecedarian affair.

3

Plaintiffs otherwise acknowledge that the severability analysis considers whether the electorate "would have preferred what is left of the [Ordinance] to no [Ordinance] at all," *see Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006), and whether the preemptive impact is so "integral" to the purpose or function of the Ordinance that the enacting body would not have enacted the Ordinance if it had foresight of the preemption that would result from litigation, *Bayside Enterprises*, *Inc. v. Maine Agricultural Bargaining Bd.*, 513 A.2d 1355, 1360 (Me. 1986). In this case, when the reach of the term "persons" is curtailed to "persons other than seafarers" (in practical effect, limited to passengers), it remains the case that the Ordinance is almost entirely capable of achieving the end for which it was drawn, *i.e.*, stemming the tide of daily cruise ship visitation to vessels with lower berth capacities of 1,000 or less. Given this reality, it would be illogical to conclude that the majority of the voters of Bar Harbor would prefer outright invalidation to a slightly more limited application of the term "persons" that might, perhaps, permit a visit by a few additional vessels. Likewise, it is wishful thinking to conclude that the electorate would have rejected the Ordinance had it understood that the term persons would be applied only to passengers.

That leaves the "free flow of commerce" challenge. Plaintiffs argue that the Amended Decision and Order is reductive and improperly reduces free-flow jurisprudence into only two categories before moving on to the *Pike v. Bruce Church* analysis. Mot. at 11–12. They assert that I failed to consider that the Ordinance "violates a well-established Commerce Clause restriction by interfering with 'transportation into or through' Bar Harbor (and Maine) 'beyond [what] is absolutely necessary for [Bar Harbor's] self-

4

protection.'" *Id.* at 13 (first quoting *Hannibal & St. J.R. Co. v. Husen*, 95 U.S. 465, 472 (1877); and then quoting *Bayley's Campground v. Mills*, 985 F.3d 153, 159–60 (1st Cir. 2021)).

The "absolutely necessary for its self-protection" standard briefly emerged in cases in which states enacted laws that had as their very object "to obstruct inter-state commerce, and to discriminate between the property of citizens of one State and that of citizens of other States." *Hannibal*, 95 U.S. at 470. The Bar Harbor Ordinance under review in this case does not have as its object the obstruction of commerce or discrimination in favor of local market participants. Instead, its object is to protect a small harbor community against the localized negative impacts of outsized cruise tourism. It is as though the State of Maine concluded (albeit through the Town of Bar Harbor exercising its home rule authority) that cruise tourism generally should continue unabated throughout the State, but that limitations on the volume of daily traffic are appropriate in the small port of Bar Harbor most heavily burdened with such traffic, where the burden is the product of an economy of scale practiced by a narrow group of market participants to the detriment of local conditions. This was a primary point observed in the Amended Decision and Order, that "the Commerce Clause does not protect the cruise line industry's 'particular structure [and] methods of operation.'" Am. Dec. and Order at 58 (alteration in original) (quoting *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127 (1978)). Yet Plaintiffs' request for an injunction pending appeal is silent on this point.

The most recent reference to the "absolutely necessary for its self-protection" standard in a majority Supreme Court decision appears in *Hennington v. State of Georgia*,

5

163 U.S. 299 (1896), which upheld a state law barring the running of all trains, including interstate trains, on Sunday.[2] The Supreme Court rejected a Commerce Clause challenge, observing that police power regulations having a "real relation to the domestic peace, order, health, and safety of their people, but which by their necessary operation, affect to some extent . . . the conduct of commerce among the states, are yet not invalid by force alone of the grant of power to congress to regulate such commerce." *Id.* at 317. Such regulations ordinarily "are to be respected in the courts of the Union until they are superseded and displaced by some act of [C]ongress passed in execution of the power granted to it by the constitution." *Id.* After all, such local laws "have their source in the powers which the states reserved, and never surrendered to congress, of providing for the public health, the public morals, and the public safety, and are not, within the meaning of the constitution, and considered in their own nature, regulations of interstate commerce, simply because, . . to a limited extent, they cover the field occupied by those engaged in such commerce." *Id.* at 317–18.

As explained in the Amended Decision and Order, it is proper that local legislatures should regulate "in matters admitting of diversity of treatment, according to the special requirements of local conditions, . . . until Congress sees fit to act." Am. Dec. and Order at 52 (quoting *Sproles v. Binford*, 286 U.S. 374, 390 (1932)); *see also id.* at 52. n.32 (quoting *National Pork Producers Council v. Ross*, 598 U.S. at 375 (recognizing "the usual

---

[2] *See Lake Shore & M. S. R. Co. v. State of Ohio*, 173 U.S. 285, 292-98 (1899) (upholding over Commerce Clause challenge Ohio law that required passenger trains to stop at a designated minimum number of Ohio municipalities as a condition of running trains in the state, observing that states are free to legislate in matters of the public convenience or general good unless or until Congress legislates otherwise (collecting cases)).

legislative power of a State to act upon persons and property within the limits of its own territory, a feature of our constitutional order that allows different communities to live with different local standards" (internal quotation marks and citation omitted)), and *Maine v. Taylor*, 477 U.S. 131, 151 (1986) ("The Commerce Clause significantly limits the ability of States and localities to regulate or otherwise burden the flow of interstate commerce, but it does not elevate free trade above all other values. As long as a State does not needlessly obstruct interstate trade or attempt to place itself in a position of economic isolation, it retains broad regulatory authority to protect the health and safety of its citizens and the integrity of its natural resources." (internal quotation marks omitted))).

Congress simply is not in the exclusive position to regulate the standards by which small port communities interface with cruise line tourism. Plaintiffs acknowledge but do not actually engage with this principle. Instead, Plaintiffs attempt to sidestep it altogether by relying on precedent involving, for example, a state's effort to control pricing in the context of interstate rail freight, *Wabash v. Illinois*, 118 U.S. 557 (1886), and puzzling Prohibition Era jurisprudence, *Leisy v. Hardin*, 135 U.S. 100 (1890). The price regulation effort in *Wabash* involved a local undertaking that the Supreme Court described as producing an "obvious injustice" that "show[ed] the value of the constitutional provision which confides the power of regulating interstate commerce to the congress of the United States." 118 U.S. at 576–77. Price regulation and the danger of follow-on legislation by other states involves a "species of regulation" that "must be, if established at all, of a general and national character, and cannot be safely and wisely remitted to local rules and local regulations." *Id.* at 577. Not so here. As for *Leisy*, the Supreme Court's Prohibition

7

Era precedent has its own unfortunate history and is unhelpful in the current context. In *Leisy*, the Supreme Court stated that transportation between states should be "free," *id.* at 113, then advanced a legal doctrine that had the effect of giving out of state purveyors of alcohol a market to sell alcohol in states that prohibited the sale of alcohol altogether, an odd state of affairs that Congress abrogated through legislation. *See Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 523–24 (2019).

That leaves the Commerce Clause standard articulated in *National Pork Producers Council*, 598 U.S. 356, which expounds on the standard found in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). When I review Plaintiff's Motion, it appears to me that Plaintiffs seek to sidestep this line of inquiry altogether based on the precedent discussed above, rather than engage with the *Pike* standard directly. For the reasons set forth above, I find that their approach is not likely to succeed. Because the likelihood of success is the weightiest factor, an injunction pending appeal is not appropriate in this case.

The Amended Motion for Preliminary Injunction Pending Appeal is **DENIED** (ECF No. 228).

SO ORDERED.

Dated this 21st day of June, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge