**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| ASSOCIATION TO PRESERVE AND PROTECT LOCAL LIVELIHOODS, et al.,<br><br>*Plaintiffs,*<br><br>PENOBSCOT BAY AND RIVER PILOTS ASSOCIATION,<br><br>*Plaintiff-Intervenor,*<br><br>v.<br><br>TOWN OF BAR HARBOR, a municipal corporation of the State of Maine,<br><br>*Defendant,*<br><br>CHARLES SIDMAN,<br><br>*Defendant-Intervenor.* | Civil Action No. 1:22-cv-416 |

**DEFENDANT-INTERVENOR CHARLES SIDMAN'S**
**MOTION TO AMEND FINDINGS AND ALTER OR AMEND JUDGMENT**

Defendant-Intervenor Charles Sidman respectfully moves this Court, under Fed. R. Civ. P. 52(b) and 59(e), to amend its findings and to alter or amend the Post-Remand Decision and Order (ECF 262) ("Dec.") to declare the Town of Bar Harbor's citizen-initiated cruise ship Ordinance constitutional in its entirety, year-round, and to enter judgment for Defendants.

## I. PRELIMINARY STATEMENT

This Court correctly applied the *Pike*-balancing test the first time, affording deference to the voters of Bar Harbor. After a three-day bench trial, the Court recognized a "rational voter" could weigh the costs and benefits "and conclude that [the Ordinance's] 1,000-passenger cap is an appropriate means of recalibrating the Town's approach" to cruise ship tourism. *APPLL v. Town of Bar Harbor*, 721 F. Supp. 3d 56, 74, 88 (D. Me. 2024) ("*APPLL I*"). The Court correctly deferred to the voters' rational policy choices, noting that "deciding whether a law's benefits are worth its costs is a matter assigned to the legislative, rather than the judicial branch of the government." *Id*. at 85. That disposition was faithful not only to *Pike v. Bruce Church Inc.*, 397 U.S. 137 (1970), but to a half-century of caution that preventing enforcement of a democratically adopted law under *Pike* balancing is a matter of 'extreme delicacy,' something courts should do only 'where the infraction is clear.'" *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 390 (2023) (quoting *Conway v. Taylor's Executor*, 66 U.S. 603 (1862)). Courts seldom find a clear infraction, as "the Supreme Court has not invalidated a law under *Pike* in more than 30 years." *Truesdell v. Friedlander*, 80 F.4th 762, 773 (6th Cir. 2023). The tension between the judiciary's repeated caution that *Pike* is "not a roving license for federal courts to decide what activities are appropriate for . . . local government to undertake" while still asking courts to determine "whether a particular line is longer than a particular rock is heavy" explains what went wrong on remand.

The First Circuit remanded this case for one discrete purpose: to make express factual findings on the Ordinance's burdens and benefits and re-perform the *Pike* balancing test based on those factual findings. This Court made those findings – indeed, it strengthened nearly every finding in Defendants' favor, devoting almost thirty of its thirty-two page decision to explaining why the Ordinance advances substantial and non-speculative local interests, including those pertaining to public safety. Yet at the final step, the Court announced that it would conduct the *Pike* test "without affording deference to the Bar Harbor voting public," Dec. at 28, and on that single legal premise, it concluded that "the ordinance's 1,000-passenger cap is not clearly excessive in relation to its local benefits during the peak summer tourism season but is clearly excessive in relation to the shoulder seasons," declaring the Ordinance "unconstitutional and unenforceable in all months other than July and August," Dec. at 31-32. That disposition – a judicially imposed regime of seasonal constitutionality that the Court itself described with evident discomfort as an "act of judicial rearrangement" – rests on manifest errors of law and finds no support in the trial record, the First Circuit's mandate, or in any decision of any court.

Not affording deference to the voters who enacted the Ordinance is a manifest error of law, central to the Court's view that the Ordinance is only constitutional *some of the time* when congestion hits critical mass. In its initial decision, this Court correctly declined to veto the voters' policy choices "by judicial fiat" to impose its own opinion about the wisdom of different seasonal caps. *APPLL I*, 721 F. Supp. 3d at 86. The policy chosen by the voters to have a uniform cap throughout the year is still rational and warrants deference. When a court applying *Pike* finds itself drafting alternative regulatory schemes it has crossed from adjudication into legislation, precisely the danger that has led the Supreme Court and the courts of appeals to confine *Pike* to the rare case of a "clear" infraction. A court that must itself design a month-by-

month calendar to locate a constitutional violation has clearly not identified the kind of "clear" infraction that justifies displacing a democratically adopted law. It is the *Pike* test – a test that already strains judicial power – being misapplied. The remedy is not more judicial line-drawing but the deference that this Court's original decision correctly applied and precedent requires.

This correction must come now, and from this Court. The voters of Bar Harbor have twice ratified the 1,000-passenger cap: first by enacting it in November 2022 by popular vote, and again in November 2024 by rejecting the Town Council's negotiated alternative of a 3,200-passenger daily cap with varying monthly limits. Now, the Town Council has signaled that it may not appeal, citing the Council's "long-held concern that the initiative process and the legislative approach enacted by initiative in 2022, is too blunt a tool to effectively manage tourism in Bar Harbor."[1] Should the Town decline to appeal, Mr. Sidman's ability to prosecute an appeal on his own is uncertain under *Diamond v. Charles*, 476 U.S. 54 (1986), and the First Circuit has already flagged its doubt that Mr. Sidman has independent standing to bring an appeal. *APPLL v. Sidman*, 147 F.4th 40, 51 n.5 (1st Cir. 2025) ("*APPLL II*") (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997)). A motion under Rules 52(b) and 59(e) is therefore the last realistic vehicle to correct manifest errors that, if left standing, will impose cruise tourism on this community, by judicial fiat, against its expressed will for ten months of every year.

## II. DISCUSSION

### *A. Legal Standard*

Rules 52(b) and 59(e) are companion vehicles by which a district court may revisit its

---

[1] Statement from the Town Council, Home Page Flash News, May 20, 2026, *available at* https://www.barharbormaine.gov/m/newsflash/home/detail/1823. A true and correct copy of the Statement from the Town Council is attached as Exhibit A.

own findings and judgment prior to an appeal. Rule 52(b) allows for courts to amend or make additional findings and amend the judgment accordingly. Fed. R. Civ. P. 52(b). Rule 59(e), in turn, allows a district court to "rectify its own mistakes in the period immediately following its decision," as the court that rendered a judgment is often best positioned to correct it. *Banister v. Davis*, 590 U.S. 504, 508 (2020). There are four grounds on which relief under Rule 59(e) may be granted: "manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, [or] an intervening change in controlling law." *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005). This Motion rests on the first ground: manifest errors of law and fact.

*B. The Post-Remand Decision rests on manifest errors of law.*

**a. *Pike* demands deference to the voters' legislative policy decisions.**

In its Post Remand Decision, this Court reapplied the *Pike* balancing test "without affording deference to the Bar Harbor voting public." Dec. at 28-29. This premise is legal error twice over: (1) it runs afoul of binding precedent; and (2) misreads the First Circuit's mandate.

The Supreme Court has repeatedly held that the dormant Commerce Clause does not license a federal court to substitute its own policy preferences for the judgment of a legislative body, least of all where the competing interests are incommensurable. "In a functioning democracy, policy choices . . . usually belong to the people and their elected representatives. They are entitled to weigh the relevant political and economic costs and benefits for themselves, and try novel social and economic experiments if they wish. Judges cannot displace the cost-benefit analysis embodied in democratically adopted legislation guided by nothing more than their own faith in Mr. Herbert Spencer's Social Statistics." *Nat'l Pork*, 598 U.S. at 382.

This deferential mandate to legislatures did not originate with *National Pork*. It is an

inherent part of the *Pike* balancing test. *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 92 (1987) ("We are not inclined to second-guess the empirical judgments of lawmakers concerning the utility of legislation."); *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 469 (1981) ("[W]e reiterate that it is up to legislatures, not courts, to decide on the wisdom and utility of legislation. . . . [T]he [lower court] erred in substituting its judgment for that of the legislature."); *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 345 (2007) ("[N]othing in the Commerce Clause vests the responsibility for that policy judgment with the Federal Judiciary."). Deference to legislative choices existed prior to and continues after *National Pork*, even within the First Circuit. *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 312 (1st Cir. 2005) ("It is not the place of this court, however, to pass judgment on the wisdom of the policies adopted by the Maine legislature."); *Triumph Foods, LLC v. Campbell*, 156 F.4th 29, 50 (1st Cir. 2025) (Gelpí, J.) (declining "incautious invitation to prevent a State from regulating the sale of an ordinary consumer good within its own borders on nondiscriminatory terms") (cleaned up); *Becky's Broncos, LLC v. Town of Nantucket*, 2026 U.S. Dist. LEXIS 65775, *12-*17 (D. Mass. Mar. 27, 2026) (Kelley, J.).

In *Becky's Broncos*, the District of Massachusetts declined to even apply *Pike* to a nondiscriminatory local car-rental licensing ordinance which "advance[d] several legitimate local interests, including managing traffic and congestion, parking, and the preservation of public and recreational space on a small island." 2026 U.S. Dist. LEXIS 65775 at *16. Citing *APPLL II* and *Triumph Foods*, it reasoned that "[b]alancing these incommensurable social and policy interests against the alleged burdens on interstate commerce would require the Court to make value judgments that are more appropriately reserved to the political process." *Id.* at *13-*14. That conclusion held special force because the ordinance "was adopted through local democratic

means," reflecting "policy determinations committed to the Town's voters." *Id*. at *14 (finding the ordinance passed *Pike* regardless).[2]

This Court, despite reaffirming and strengthening its findings about the Ordinance's substantial local benefits, gave no deference to the voters' chosen policy decision that the harms caused by cruise visitation warranted a 1,000 passenger cap year-round. Under the correct standard, the *Pike* analysis ends very quickly. This Court has found – twice now – that the Ordinance advances real, non-illusory, local benefits to reduce congestion and increase safety throughout the downtown. The voters determined that congestion, safety concerns, and resource expenditures were prevalent enough, *for them*, beyond July and August to warrant a year-round application. The Court is not positioned to second guess the voters' judgment under *Pike*.[3]

Second, the First Circuit's mandate did not instruct this Court to refuse deference to the voters. Nowhere in its 72-page decision did the panel state that this Court on remand should not

[2] Courts in other circuits agree that deference must be afforded to local legislatures. *See, e.g.*, *Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 569 (4th Cir. 2005) (instructing courts to "proceed with deference to the state legislature"); *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 164 (5th Cir. 2007) ("[W]e cannot second-guess the empirical judgments of lawmakers concerning the utility of legislation."); *Truesdell*, 80 F.4th at 773 (Murphy, J.) (refusing to apply "[a]n unconstrained balancing test asking judges to weigh a law's benefits against its costs requir[ing] them to make 'subjective' policy 'judgments' far outside their area of expertise in neutrally interpreting legal texts."); *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1132 (7th Cir. 1995) ("[A] law can be both economic folly and constitutional."); *Flynt v. Bonta*, 131 F.4th 918 (9th Cir. 2025) (Bress, J.) ("[U]nless the benefits of the state's law are 'illusory,' courts typically accept the state's articulation of the law's claimed benefits."); *cf. N.Y. Times Co. v. Microsoft Corp*., 777 F. Supp. 3d. 283 (S.D.N.Y. 2025) (Stein, J.) (passing *Pike* test because "Pike's balancing and tailoring principles are most frequently deployed to detect . . . economic protectionism" not present in case).

[3] The Post-Remand Decision faulted the Initiative's authors for never performing "their own *Pike* balancing," calling the omission "indifference." Dec. at 31. But no enacting body must compile findings or perform constitutional balancing as a condition of validity. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). Nor is this criticism accurate. The Initiative's authors – and more importantly, the voters – did weigh the competing interests. The Purpose Section explicitly relied on the "town-wide survey" conducted in 2021, which canvassed cruise tourism's benefits and burdens, and the 1,000 figure resulted. PX243A.003; PX323. The Initiative's authors could have chosen 500 cruise passengers or even zero. Despite voter sentiment for a complete ban, DX323.177, the Initiative's authors chose 1,000, in line with the downtown's capacity to safely handle that number. PX032.023 (report showing inability of the downtown, including at the waterfront, to effectively manage congestion "even on a light cruise day with fewer than 2000 PAX"). And as this Court previously found, "the voters of Bar Harbor weighed the relevant political and economic costs and benefits for themselves and the voters evidently decided that the noneconomic benefits of the Ordinance favored adopting it." *APPLL I*, 721 F.Supp.3d at 97. *Pike* commits that judgment to them.

afford any deference to the voters. Rather, in commenting on what it perceived to be a "gap in the findings" between congestion at the waterfront and congestion in the "downtown area" – for which the Initiative's Purpose Section identified as an underlying justification – the First Circuit observed the significance of understanding the wishes of the voters in light of "the District Court's [heavy reliance] on the need to defer to the judgment of Bar Harbor's voters in its ultimate *Pike* balancing." *APPLL II*, 147 F.4th at 69. The First Circuit did not condemn this Court's initial deference – it simply wanted factual clarification on what the voters wanted: reduced congestion only at the waterfront or in the broader downtown. This Court's Post-Remand Decision made that clarification – "the waterfront is an integral part of downtown Bar Harbor that members of the local public wish to enjoy." Dec. at 15. And it found that the harms the Ordinance sought to alleviate were found throughout the downtown area, "even beyond the waterfront." Dec. at 16. That was all the First Circuit asked this Court to do.

With proper deference to the legislative body – the voters – it cannot be said that the burdens on interstate commerce are clearly excessive to the putative local benefits, either two months of the year or twelve. That was the appraisal of the voters in enacting the Ordinance year-round. With deference warranted to the voters, those policy decisions should not be disturbed.

**b. Seasonal constitutionality of an ordinance has no basis in law.**

The Court's Solomonic remedy of declaring the Ordinance constitutional two months of the year and unconstitutional the remainder is constitutionally infirm for two reasons. First, an infraction cannot be "clear" if a law is *sometimes* constitutional. Undersigned counsel has found no decision holding a uniform law constitutional for part of the year and unconstitutional for the rest. While legislatures sometimes write seasonal laws, courts do not impose seasons on

uniformly written laws. A "clear infraction" lies in the relationship between burdens and benefits; it does not switch on and off with the calendar. *Cf. Dept. of Revenue v. Davis*, 553 U.S. 328, 355 (2008) ("What is most significant about these cost-benefit questions is not even the difficulty of answering them or the inevitable uncertainty of the predictions that might be made in trying to come up with answers, but the unsuitability of the judicial process and judicial forums for making whatever predictions and reaching whatever answers are possible at all.").

Second, if ordinary *Pike* balancing already strains the judicial role, fashioning a month-by-month constitutional calendar has left the realm of the judiciary entirely. *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 524 (1959) ("If there are alternative ways of solving a problem, we do not sit to determine which of them is best suited to achieve a valid state objective. Policy decisions are for the state legislature . . . ."). A court prescribing alternative regulatory schemes – a judicially imposed seasonal calendar, "periodic accommodation" of larger vessels, or higher-caps/fewer-days redesign – is legislation, not adjudication. *See* Dec. at 31. To be sure, *Pike* asks whether a local interest "could be promoted *as well* with a lesser impact on interstate activities." *Pike*, 397 U.S. at 142 (emphasis added). But none of these alternative regulatory schemes can reduce congestion, conserve municipal resources, or increase safety *as well* as the 1,000-passenger, year-round cap.[4] The Court's proffered alternatives venture into managing days of the year when Bar Harbor residents are free to access their own downtown. That is not the role of the judiciary. "[T]he fact the line might have been drawn differently at some points is a

[4] Higher caps, even during the shoulder seasons, by their very nature of disembarking more passengers into downtown, are less effective in reducing congestion. Seasonal expansion of a cap would also, by its very nature, be less effective in reducing congestion. Allowing larger vessels "periodically" to disembark their full complement of 5,000+ passengers would be less effective in reducing congestion on those days. And the same is true of allowing higher caps but on fewer days.

matter for legislative, rather than judicial, consideration." *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980); *accord Yamaha Motor Corp*., 401 F.3d at 569.

The flaw is not in the Ordinance. It is in the Court's endeavor to apply *Pike* and its arrival at a policy determination reserved for the legislature. The Court's own candid lament at "this act of judicial rearrangement" is correct – "problems of this kind are best addressed in a legislative venue." Dec. at 31-32. Precedent does not demand otherwise.

C. *The Post-Remand Decision rests on manifest errors of fact concerning the distinction between peak and shoulder seasons.*

The Court treated a July-August peak as "longstanding and self-evident," being different enough from the shoulder seasons to warrant different treatment. Dec. at 31. The record does not support a two-month peak, nor fluctuation that warrants different treatment. As this Court found in its initial decision, "*fall* congestion is largely a function of cruise ship visitation, resulting in an undeniable change to the annual rhythm of municipal life." *APPLL I*, 721 F. Supp. 3d at 74; *accord* DX260.053. Indeed, citizens complain that "the fall season is not a 'shoulder season' and hasn't been for over a decade. There are far too many land-based people here already to add thousands of people every day." DX323.174; *see also* DX323.081 ("Less tourism in Spring and Fall would be welcome – it's too busy."); DX323.100 ("Weekends in October have been about as busy as August the last few years."). DX323.164 ("Too many people in one day. In the fall it can be a mob scene."); DX323.170 ("I won't even go grocery shop in BH during the summer and fall."). And the reality shows a six-month peak from May to November each year.[5] DX402.005 (showing taxable restaurant sales peak for six months during

[5] Additionally, the "shoulder seasons" are fabricated concepts by business interests in Bar Harbor to increase visitation beyond the "central season" of Memorial Day to Labor Day. July 11, 2023 Tr. 135:22-136:17. It is precisely the sort of favored methods of operation that the Commerce Clause does not protect. *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127-28 (1978); *Nat'l Pork*, 598 U.S. at 387.

May-Oct. 2018); July 13, 2023 Tr. 31:13-18 (Harbor Master Wharff testifying Town hires full-time seasonal employees to attend to cruise ship passengers "from the middle of May through the end of cruise ship season, which is end of October").[6]

Nor are the "shoulder seasons" devoid of the problems the Ordinance is designed to alleviate. PX217.035 (2022 Cruise Management Plan charting cruise visitation and warning "[t]here are more cruise passengers and perhaps more concern for congestion in Fall."). Indeed, in 2019, a CLIA-commissioned report noted that even in the "'soft' spring season of tourism," "pedestrians overflowed the areas designated for them, spilling into the streets." PX032.018. As the Court is aware, the "unique congestion problem associated with high-berth cruise tourism," with the "unique ability to transform the shoulder season, calling in Bar Harbor on a near daily basis in especially large cruise ships . . . make differential treatment rational." *APPLL I*, 721 F. Supp. 3d at 74, 87. Limited abatement of other forms of tourism during the non-summer months do not make the Ordinance's benefits illusory.

## III. **CONCLUSION**

Mr. Sidman respectfully requests that the Court grant this Motion, amend its findings and conclusion to apply the deference *Pike* and its governing precedent require; vacate the determination that the Ordinance is unconstitutional in any month; hold the Ordinance constitutional in its entirety, year-round; and enter judgment for Defendants.

---

[6] Indeed, in 2025, the Town commissioned a study by third party consultants to assist its Sustainable Tourism Task Force. The consultants performed a "footfall" study that shows rising congestion from May through October. Equator AI, Situational Analysis Presentation, Feb. 11, 2026 (a true copy of the study is attached as Exhibit B). Additionally, State tax data shows a six-month peak in taxable sales in Bar Harbor. State of Maine's Sales Tax Reports for Bar Harbor, located at https://www.maine.gov/revenue/sites/maine.gov.revenue/files/inline-files/March%202026%20Monthly%20ESA.xlsx (true excerpts of the report are attached as Exhibit C)). To the extent these real-world developments help the Court to weigh the benefits and burdens of the Ordinance, Mr. Sidman respectfully requests that this Court take judicial notice of Exhibits A, B, and C. Alternatively, Mr. Sidman asks this Court to reopen the record in order to consider evidence of monthly visitation, congestion, safety, and municipal services in Bar Harbor.

Respectfully submitted,

Dated: June 12, 2026

*/s/Robert J. Papazian*

Robert J. Papazian, Bar No. 6491
GEBHARDT & KIEFER, P.C.
1318 Route 31 North
Annandale, NJ 08801
(908)735-5161
bpapazian@gklegal.com

Dated: June 12, 2026

*/s/David P. Silk*

David P. Silk, Bar No. 3136
CURTIS THAXTER LLC
200 Middle Street, Suite 1001
P.O. Box 7320
Portland, ME 04112-7320
(207)774-9000
dsilk@curtisthaxter.com

*Attorneys for Defendant-Intervenor Charles Sidman*